UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WENDY PALLAS, | CASE NO. 1:15CV722 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| v. | GEORGE J. LIMBERT |
| CAROLYN W. COLVIN[1], | |
| ACTING COMMISSIONER OF SOCIAL | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | AND ORDER |
| Defendant. | |

Plaintiff Wendy Pallas ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on August 17, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred by: (1) violating the treating physician rule; and (2) failing to rely on substantial evidence when determining that Plaintiff had the ability to perform occasional handling bilaterally. ECF Dkt. #12. On October 15, 2015, Defendant filed a response brief. ECF Dkt. #14. Plaintiff did not file a brief in reply.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on November 4, 2011.  ECF Dkt. #9 ("Tr.") at 24.[2]  These claims were denied initially and upon reconsideration.  *Id.*  Plaintiff then requested a hearing before an ALJ, and her hearing was held on October 16, 2013.  *Id.*

On November 27, 2013, the ALJ denied Plaintiff's applications for DIB and SSI.  Tr. at 24. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.  *Id.* at 27.  Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 13, 2010, the alleged onset date.  *Id.*  The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; bilateral carpal tunnel syndrome; fibromyalgia; generalized anxiety disorder; and personality disorder with borderline and dependent traits.  *Id.*  Following his analysis of Plaintiff's severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 30.  After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff was limited to: frequently handling or fingering; occasionally stooping, kneeling, crouching, crawling, or climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; avoiding all exposure to hazards; performing simple, detailed, or complex tasks in a setting with no multi-tasking, fast-pace requirements, or strict performance deadlines, with no more than infrequent changes; and interactions with coworkers, supervisors, and the public that are limited to speaking and signaling.  *Id.* at 32.

Next, the ALJ determined that Plaintiff had no past relevant work.  Tr. at 38.  The ALJ stated that Plaintiff was a younger person on the date she alleged her disability began, had at least a high school education and was able to communicate in English, and that the transferability of jobs skills

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

was not material to the determination of disability because the Medical-Vocational Guidelines supported a finding that Plaintiff was not disabled. *Id.* at 39. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 13, 2010 through the date of the decision. *Id.* at 40. A request for review of the ALJ's decision was filed with the Appeals Council on December 17, 2013. Tr. at 20. This request for review was denied. *Id.* at 7. At issue is the decision of the ALJ dated November 27, 2013, which stands as the final decision. *Id.* at 21.

On April 14, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on August 17, 2015, posing the following questions to the court for consideration:

1. Whether the ALJ's treatment of the opinion evidence violates the treating physician rule, and is not supported by good reasons and ignores the controlling SSA regulation.

2. Whether substantial evidence supports the ALJ's conclusion that Plaintiff has the ability to perform occasional handling bilaterally.

ECF Dkt. #12. Defendant filed a response brief on October 15, 2015. ECF Dkt. #14. Plaintiff did not filed a reply.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

After finding that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015 and that she had not engaged in substantial gainful activity since May 31, 2010, the amended alleged onset date, the ALJ determined that Plaintiff had severe impairments that had more than a minimal effect on her ability to perform basic mental and physical work activities, as detailed above. Tr. at 27-28. In addition to listing the impairments that the ALJ found to be severe, the ALJ explained that he made the following determinations regarding Plaintiff's alleged severe impairments: fibromyalgia was considered as a severe impairment; laboratory studies were sufficient to exclude rheumatoid arthritis as a severe impairment; there was no medical evidence to support a diagnosis for osteoarthritis and it was therefore not medically determinable;

no evidence supported a finding of a pituitary adenoma or prolactinoma; and studies revealed no evidence supporting a seizure disorder. Tr. at 28-29. The ALJ found that Plaintiff did suffer from medically determinable impairments that were not severe, as defined by the Social Security Act, and indicated that he considered the minimal effects of these impairments when making his RFC finding. *Id.* at 29-30. Continuing, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 30. In his analysis, the ALJ indicated that he considered Listing 1.04 (disorders of the spine), Listing 11.14 (central nervous system vascular accident), Listing 13.09 (breast), and paragraph B of Listing 12.04 (affective disorders), Listing 12.06 (anxiety-related disorders), and Listing 12.08 (personality disorders). *Id.* at 30-31. In addition to the above stated Listings, the ALJ considered paragraph C of Listing 12.04 and 12.06. *Id.* at 32. The ALJ provided an explanation for his decision regarding each Listing considered and determined that none of the Listings were met or medically equaled. *Id.* at 30-32. When making these determinations, the ALJ found that Plaintiff had a mild restriction in her range of activities of daily living, moderate difficulties with social functioning, moderate difficulty maintaining concentration, persistence, or pace, and that Plaintiff had not experienced any extended episodes of decompensation. *Id.* at 31. To support these findings, the ALJ noted that Plaintiff: lived independently with her young son who depended on her for care, although Plaintiff's mother provided substantial assistance; was able to bathe, dress, and feed herself without routine daily assistance; maintained her home and performed basic household chores; managed her own finances, although she preferred not to shop in stores alone; rarely went out alone but was able to attend appointments; watched television; lived with her boyfriend; and engaged in frequent socialization with her mother. *Id.*

After considering the record, the ALJ determined that Plaintiff had the RFC to perform light work, with the restrictions described above. Tr. at 32. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. *Id.* To support this finding, the ALJ began by stating that Plaintiff's allegations

concerning the severity of her limitations were not consistent with the objective medical findings documented in the record and providing an exhaustive list of the medical findings regarding Plaintiff's condition. *Id.* at 33-35. Next, the ALJ determined that the treatment Plaintiff sought and received for her symptoms was not what would be expected in the case of a person who was disabled within the meaning of the Social Security Act. *Id.* at 35. The ALJ noted that Plaintiff routinely denied many of the symptoms that were now being alleged, described herself as feeling well on many occasions, had not sought any specialist mental health treatment, and had not sought psychological counseling or therapy. *Id.*

Continuing, the ALJ provided an in-depth discussion of the weight afforded to the opinions of physicians who had provided treatment to Plaintiff. The ALJ afforded controlling weight to the opinion of Joseph B. Carter, M.D., provided one week before Plaintiff's surgery due to thyroid cancer, indicating that Plaintiff's thyroid cancer imposed no work-related impairments. Tr. at 35. According to the ALJ, Dr. Carter's opinion was not inconsistent with any substantial evidence on the record, and was therefore entitled to controlling weight with respect to the severity of the limiting effects of Plaintiff's thyroid cancer. *Id.*

The ALJ afforded little weight to the August 2012 and July 2013 opinions of Deepak Raheja, M.D., indicating that the limitations provided by Dr. Raheja in his opinions were inconsistent with Plaintiff's activities of daily living and abilities, and that a portion of the opinions were based on physical or mental limitations that were excluded by the objective medical evidence. Tr. at 36. According to the ALJ, Dr. Raheja indicated in his August 2012 opinion that Plaintiff was able to: lift and carry less than two pounds; had unspecified and unquantified limitations on her ability to sit, stand, and walk; and was completely unable to climb, balance, stoop, kneel, crawl, reach, handle, feel, push, pull, or perform fine or gross manipulations. *Id.* The ALJ indicated that Plaintiff must be allowed to take additional breaks during the work day and would need the option to sit or stand at will. *Id.* at 35-36. Further, the ALJ found that many of Dr. Raheja's treatment notes relied upon in issuing the August 2012 opinion were largely illegible. *Id.* The ALJ stated that Dr. Raheja's July 2013 opinion, issued contemporaneously with treatment notes that were typed and "much more legible" than the August 2012 treatment notes, documented clinical exams before,

-5-

after, and concurrent with the July 2013 opinion, provided limitations that were not consistent with objective medical evidence or Plaintiff's reported abilities, and carried "little power to persuade." *Id.* at 36-37. To support this finding, the ALJ indicated that Dr. Raheja limited Plaintiff to: lifting and carrying less than five pounds occasionally and less than two pounds frequently; standing or walking for no more than fifteen minutes total in an eight-hour workday, for only five minutes at a time; sitting for no more than two hours in an eight-hour workday, for only thirty minutes at a time; never climbing, balancing, stooping, crouching, kneeling, crawling, reaching, pushing, pulling, or performing fine or gross manipulations; never working around heights, moving machinery, temperature extremes, pulmonary irritants, or noise; and requiring a total of eight hours of breaks in an eight-hour workday. *Id.* at 36.

Next, the ALJ indicated that he afforded great weight to the opinion of Matthew Paris, Psy.D., an independent consulting psychologist who interviewed Plaintiff at the request of the Ohio Department of Development Disabilities ("Ohio DDD"), finding, in part, that Plaintiff appeared to exaggerate her medical and psychological symptoms. Tr. at 37. Further, Dr. Paris opined that Plaintiff had no significant limitation that would impair her ability to: manage her finances; understand and remember instructions; or perform simple and multi-step tasks. *Id.* Dr. Paris indicated that Plaintiff's symptoms would interfere with her ability to maintain attention and concentration for extended periods, and respond appropriately to supervisors, coworkers, and work pressures. *Id.* The ALJ determined that Dr. Paris' opinion was consistent with the record as a whole, including Plaintiff's ability to care for herself and her son despite her limited social activities outside the home. *Id.*

Continuing, the ALJ afforded great weight to the opinions of Mary K. Hill, Ph.D., and Patricia Semmelman, Ph.D., the Ohio DDD consulting psychologists. Tr. at 37. Both consultants determined that Plaintiff retained the mental capacity to perform a variety of tasks in a static work environment with no multi-tasking, no requirement for rapid task completion, and only superficial interactions with others. *Id.* The ALJ determined that both opinions from the Ohio DDD consulting psychologists were consistent with the record as a whole, including Dr. Paris' assessment and Plaintiff's own decision not to seek specialist mental health treatment. *Id.*

The ALJ afforded great weight to the Ohio DDD consulting physician who reviewed the record at the reconsideration level, Lynne Torello, M.D., determining that Plaintiff retained the physical capacity to perform light work with: no more than frequent handling, or fingering; no more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; and no exposure to hazards. Tr. at 37. To support affording great weight to Dr. Torello's opinion, the ALJ indicated that the opinion is consistent with the record as a whole and with Plaintiff's diagnosis for fibromyalgia, even in the absence of objective clinical findings of significant physical limitations. *Id.*

The ALJ afforded less weight to the opinion of the Ohio DDD consulting physician who reviewed the record at the initial level, Esberdado Villanueva, M.D., because Dr. Torello's opinion was more consistent with evidence received at the reconsideration and hearing levels that indicated Plaintiff was capable of more than occasional handling. Tr. at 37. Finally, the ALJ indicated that he considered the statement provided by Francis Kellerman, Plaintiff's mother and afforded it weight consistent with Ms. Kellerman's standing as a lay, interested witness. *Id.* at 38.

Following the RFC determination, that ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual on the amended alleged disability onset date, had at least a high school education, and was able to communicate in English. Tr. at 38-39. The ALJ found that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 39. Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 13, 2010 through the date of the decision. *Id.* at 39-40.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.  LAW AND ANALYSIS

### A.  Treating Physician Rule

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet

-9-

the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Plaintiff asserts that the ALJ erred by discounting the treating physician rule and instead affording controlling weight to the opinion of the treating oncologist, Dr. Carter, as well as a reviewing state agency physician, Dr. Torello. ECF Dkt. #12 at 7. Continuing, Plaintiff contends that the ALJ improperly disregarded the opinion of one of her treating physicians, Dr. Raheja, providing strong evidence that Plaintiff was disabled based only on the illegibility or treatment notes and the finding that the opinion provided little objective support. *Id.* at 7-8. Plaintiff argues that Dr. Raheja's opinion was entitled to deferential weight as the opinion of a treating physician and that ALJ was required to articulate good reasons to disregard the opinion. *Id.* at 8.

After stating the limitations imposed in Dr. Raheja's July 2013 opinion, Plaintiff asserts that the ALJ's reliance on the opinion of physicians other than Dr. Raheja was misguided because: (1) Dr. Carter's opinion imposing no work-related limitations was only in respect to the severity of limitations resulting from Plaintiff's thyroid cancer; and (2) Dr. Torello's opinion improperly limited Plaintiff to frequent handling and fingering. *Id.* at 8. Further, Plaintiff argues that the ALJ erred in determining that Dr. Raheja's treatment notes contained insufficient objective evidence based on the illegibility of the notes. *Id.* at 9. Continuing, Plaintiff contends that the ALJ erred by failing to provide sufficient reasoning as to affording Dr. Villanueva's opinion little weight. ECF

-10-

Dkt. #12 at 10.  Based on the above, Plaintiff maintains that the ALJ's failure to properly articulate his reasons for rejecting the opinion of Plaintiff's treating physician deprives the Court of the ability to conduct any meaningful review.  *Id.* at 10.

Defendant contends that the ALJ discussed Dr. Raheja's August 2012 and July 2013 opinions at length, and provided proper reasons for discounting the opinions.  ECF Dkt. #14 at 11-14.  First, Defendant indicates that the ALJ acknowledges Dr. Raheja's August 2012 opinion and recites the limitations imposed, as discussed above.  *Id.* at 11.  Defendant states that the ALJ gave this assessment little weight because it was inconsistent with Plaintiff's ability to care for herself and her son "outside of an assisted living facility," as well as being inconsistent with Dr. Raheja's own treatment notes and those of Plaintiff's other physicians.  *Id.*

As for Plaintiff's mental limitations, Defendant asserts that the ALJ found that Dr. Raheja's opinion was inconsistent with Plaintiff's ability to function independently and care for her young son.  *Id.*  Defendant notes that the ALJ indicated that Dr. Raheja assessed Plaintiff with a "poor" ability for numerous mental tasks, including her ability to use judgment, maintain attention and concentration for extended periods, respond to changes in her work setting, maintain attendance, relate to coworkers, interact with supervisors, and behave in an emotionally stable manner.  *Id.*  Continuing, Defendant states that the ALJ noted that Dr. Raheja defined "poor" "unhelpfully, as an ability that is 'significantly limited,'" and therefore further undermined the authority of the opinion.  *Id.* (internal citation omitted).  More importantly, according to Defendant, the ALJ noted that Dr. Raheja's assessment of Plaintiff's mental abilities as poor or fair was inconsistent with Plaintiff's ability to live independently, socialize with her boyfriend and mother-in-law, attend doctor's appointments, manage her finances, and care for her son.  *Id.*

Defendant asserts that the ALJ indicated that Dr. Raheja attributed Plaintiff's mental limitations, in part, to conditions that diagnostic evidence, including his own treatment notes, had medically excluded.  ECF Dkt. #14 at 11.  Specifically, Defendant states that the ALJ noted that rheumatoid arthritis had been medically excluded by the comprehensive rheumatologic laboratory studies, and seizure disorder was excluded by the ambulatory electroencephalogram study that Dr. Raheja had ordered and interpreted.  *Id.* at 11-12.

-11-

Moving to Dr. Raheja's July 2013 opinion, Defendant first indicates that Dr. Raheja limited Plaintiff to: lifting and carrying less than five pounds occasionally and less than two pounds frequently; standing or walking for no more than fifteen minutes in and eight-hour workday; and sitting for no more than two hours in an eight-hour workday. ECF Dkt. #14 at 12. Defendant also notes that Dr. Raheja opined that Plaintiff could not perform, *inter alia*, fine or gross manipulations, and would need a total of eight hours of extra breaks per eight-hour workday. *Id.* Defendant contends that the ALJ properly afforded this opinion little weight because, in part, Dr. Raheja's contemporaneous treatment notes indicated normal muscle tone and motor power in all four extremities, as well as normal gait, station, sensation, and deep tendon reflexes. *Id.* Further, Defendant asserts that the ALJ noted that Dr. Raheja's clinical notes indicated only subjective tenderness to palpitation in Plaintiff's lower back and a "positive [straight leg test] bilaterally" without mention of the angle at which the leg elicited a subjective pain complaint, nor the locations of the pain, "both of which are essential in proper performance of the test." *Id.* (quoting Tr. at 37). Defendant argues that given the paucity of the contemporaneous support for Dr. Raheja's opinion and his incomplete analysis of Plaintiff's leg raise test, the ALJ reasonably discounted Dr. Raheja's assessment." *Id.*

Next, Defendant contends that Plaintiff's argument that the ALJ erred by not obtaining legible copies of Dr. Raheja's treatment notes fails because not all of the treatment notes were illegible and, in fact, the notes from July 2013 were typed and directly contrary to his opinion. ECF Dkt. #14 at 13. Additionally, Defendant argues that if the ALJ did err by not seeking clarification treatment notes, the error was harmless because there were ample reasons to discount Dr. Raheja's opinion other than the notes. Defendant asserts that Plaintiff's contention that Dr. Raheja provided specific support for the opinion of her limitations was referring to Plaintiff's subjective complaints, and that clinical notes that are "a mere... catalogue of symptoms do[] not indicate functional limitations caused by the impairment." *Id.* at 14 (citing *McClanahan v. Comm'r of Soc. Sec.*, No. 1:09-cv-746, 2011 WL 691365, *10 (S.D. Ohio Jan. 20, 2011)). Defendant argues that Plaintiff fails to cite to any clinical record that does more than catalogue her subjective complaints. *Id.*

-12-

Continuing, Defendant contends that there is nothing in the ALJ's decision indicating that he adopted Dr. Carter's opinion for any condition other than thyroid cancer, despite Plaintiff's contention to the contrary. ECF Dkt. #14 at 14-15. Defendant quotes the ALJ, stating that Dr. Carter's opinion was "entitled to controlling weight with respect to the severity of the limiting effects of [Plaintiff's] thyroid cancer." *Id.* at 15 (citing Tr. at 35). Moreover, according to Defendant, the ALJ's RFC determination provided ample physical and mental limitations, disproving Plaintiff's argument that the ALJ impermissibly applied Dr. Carter's opinion to her other ailments. *Id.*

Finally, Defendant moves on to the opinions submitted by the two consulting state agency physicians. ECF Dkt. #14 at 15. Defendant indicates that, when discounting Dr. Villanueva's opinion, the ALJ not only cited the inconsistency of the opinion and the record, but also relied on the opinion from Dr. Torello at the reconsideration level that Plaintiff could perform light work with no more than frequent handling or fingering. *Id.* Defendant asserts that the ALJ indicated that he was affording Dr. Torello's opinion great weight because it was consistent with the record as a whole, as well as Plaintiff's fibromyalgia diagnosis. *Id.* Further, Defendant contends that Plaintiff fails to cite any evidence supporting Dr. Villanueva's opinion. *Id.*

Plaintiff's arguments fail. Contrary to Plaintiff's position, the ALJ provided good reasons for discounting the opinions of Dr. Raheja. The ALJ first discussed Dr. Raheja's August 2012 opinion and the limitations therein, as described above. Tr. at 35. After presenting the limitations imposed on Plaintiff by Dr. Raheja, the ALJ found that the opinion was inconsistent with Plaintiff's ability to care for herself and her son outside an assisted living facility. *Id.* Continuing, the ALJ indicated that Dr. Raheja's opinion was not supported by objective clinical support in the portions of Plaintiff's treatment notes that were legible. *Id.* The ALJ then listed the mental limitations imposed on Plaintiff by Dr. Raheja, and indicated that the mental capacity opinion was inconsistent with Plaintiff's ability to live outside of a nursing facility and care for her son on a daily basis. *Id.* Further, the ALJ determined that Dr. Raheja's mental capacity opinion was inconsistent with Plaintiff's ability to manage her own finances, attend appointments with multiple healthcare providers in different locations, and to retain positive relationships with her son, mother, and

-13-

boyfriend. *Id.* The ALJ further determined that Dr. Raheja attributed Plaintiff's physical and mental limitations in part to conditions that diagnostic evidence in the record, including in Dr. Raheja's own notes, had medically excluded, including rheumatoid arthritis and a seizure disorder. *Id.*

Likewise, the ALJ began the discussion of Dr. Raheja's July 2013 opinion by stating the limitations imposed upon Plaintiff, as described above. Tr. at 36. The ALJ noted that the July 2013 opinion was contemporaneous with clinical notes, which were "much more legible that Dr. Raheja's earlier notes." *Id.* Based on the treatment notes, the ALJ indicated that, on the same day the ALJ issued his opinion regarding Plaintiff's limitations, Dr. Raheja stated that Plaintiff: was alert and oriented to time, place, and person; demonstrated a normal attention span and concentration, appropriate mood and affect, and fluid speech; showed a normal ability to name objects, repeat phrases, and comprehend; had normal recent and remote memory, a normal fund of knowledge, normal vocabulary, and normal cognition; presented with normal muscular tone, motor power, and coordination in all four extremities; and had normal gait and station, normal sensation, and normal deep tendon reflexes. *Id.* The ALJ also stated that Dr, Raheja noted only subjective tenderness to palpation in Plaintiff's lower lumbar region and "positive [straight leg raise] bilaterally," but also that the positive straight leg raise test was deficient in that it did not mention the angle at which the leg raise elicited a subjective pain complaint or the reported location of the pain, "both of which are essential in proper performance of the test." *Id.* at 36-37. Based on the above, the ALJ found that the highly subjective findings on which Dr. Raheja based his July 2013 opinion, which had no correlating objective findings, conflicted sharply with the opinion itself. Concluding, the ALJ determined that Dr. Raheja's opinions were not consistent with the objective medical evidence or Plaintiff's reported abilities, and carried little power to persuade.

The ALJ provided reasons for discounting Dr. Raheja's opinions that were "sufficiently specific to make clear any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See* SSR 96-2p. When affording lesser than controlling weight to Dr. Raheja's opinion, the ALJ adequately explained the limitations contained in the August 2012 and July 2013 opinions issued by Dr. Raheja, and explained how the

-14-

limitations imposed in those opinions were inconsistent with Plaintiff's testimony regarding her activities and abilities, as well as Dr. Raheja's own treatment notes. Plaintiff's argument that the ALJ erred by not seeking clarification of the treatment notes that were illegible is without merit. The ALJ did not discredit Dr. Raheja's opinion solely based on the lack of legible treatment notes, instead relying on the legible portions of the August 2012 treatment notes and the wholly legible July 2013 treatment notes in his determination that Dr. Raheja's opinions were inconsistent with Plaintiff's testimony and treatment records. Moreover, even if the ALJ did err by failing to seek clarification of the illegible portions of the August 2012 treatment notes, this error was harmless since the ALJ had nonetheless provided good reasons for discounting Dr. Raheja's opinion, and Plaintiff has not presented any reason to believe that the illegible portion of the August 2012 treatment notes would support any finding other than the finding made by the ALJ.

Further, Plaintiff's argument that the ALJ improperly relied on Dr. Carter's opinion imposing no work-related limitations because the opinion was only regarding limitations resulting from Plaintiff's thyroid cancer lacks merit. The ALJ explicitly recognized that Dr. Carter's opinion was only regarding the limitations imposed as a result of Plaintiff's thyroid cancer, and nothing in the ALJ's decision suggests that Dr. Carter's opinion was considered as to any of Plaintiff's other ailments. *See* Tr. at 35.

Additionally, Plaintiff asserts that the ALJ failed to explain why he afforded greater weight to the opinion of state agency physician Dr. Torello than state agency physician Dr. Villanueva. While it may be true that the ALJ could have provided greater detail into his reasoning for favoring the opinion of Dr. Torello over Dr. Villanueva's opinion, Plaintiff fails to establish how the failure to do so was reversible error. Plaintiff does not allege that Dr. Villanueva was a treating physician, and, in fact, Dr. Villanueva was not a treating physician as he acted as a consulting physician for the Ohio DDD. As such, the ALJ was not bound by the treating physician rule when weighing Dr. Villanueva's opinion. Moreover, Plaintiff fails to cite any evidence that is contradictory to Dr. Torello's opinion or supportive of Dr. Villanueva's opinion. Further, prior to stating that Dr. Villanueva's opinion was not consistent with the medical record, the ALJ provided a lengthy analysis of the medical record, demonstrating that he was familiar with Plaintiff's medical history.

Tr. at 33-35. Plaintiff has failed to demonstrate that the ALJ did not properly weigh the opinions of the state agency physicians.

For the above stated reasons, Plaintiff has not shown that the ALJ erred by failing to comply with the treating physician rule.

### B. Substantial Evidence

Plaintiff briefly asserts that substantial evidence supported a finding that Plaintiff experienced more restrictive limitations in handling and fingering than imposed by the ALJ in his RFC finding. ECF Dkt. #12 at 11. In support of this position, Plaintiff cites the opinions of Dr. Raheja and Dr. Villanueva limiting Plaintiff to occasional handling and fingering. *Id.* at 11-12. As discussed in the previous section of the instant Memorandum Opinion and Order, the ALJ did not err by discounting the opinions of Dr. Raheja and Dr. Villanueva. Accordingly, the ALJ was not bound to accept the opinion of these physicians regarding Plaintiff's ability to handle and finger. The ALJ's findings were supported by substantial evidence, and his decision was in the "zone of choice" within which the Secretary may proceed without interference from the courts. *See Buxton*, 246 F.3d at 773.

### VI. CONCLUSION

For the reasons stated above, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: July 13, 2016              */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE